## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | |
|---|---|
| **GARARDO GARCIA-MALDONADO,** individually and on behalf of all others similarly situated, | § § § DOCKET NO. _____ § |
| **Plaintiff,** | § **JURY TRIAL DEMANDED** § § **COLLECTIVE ACTION** |
| vs. | § **PURSUANT TO 29 U.S.C. § 216(b)** § |
| **WPX ENERGY SERVICES COMPANY, LLC,** | § § § |
| **Defendant.** | § |

### ORIGINAL COLLECTIVE ACTION COMPLAINT

#### SUMMARY

1. Plaintiff Garardo Garcia-Maldonado ("Plaintiff" or "Garcia-Maldonado") brings this lawsuit to recover unpaid overtime wages and other damages from WPX Energy Services Company, LLC ("Defendant" or "WPX") under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA").

2. WPX employs oilfield personnel, like Garcia-Maldonado, to carry out its work.

3. Garcia-Maldonado, and the other workers like him, were typically scheduled for 12 hour shifts, 7 days a week, for weeks at a time.

4. But WPX does not pay all of these workers overtime for hours worked in excess of 40 hours in a single workweek.

5. Instead, WPX paid Garcia-Maldonado, and other workers like him, the same hourly rate for all hours worked, including those in excess of 40 in a workweek.

6. This action seeks to recover the unpaid overtime wages and other damages owed to these workers.

## JURISDICTION & VENUE

7. This Court has jurisdiction over the subject matter of this action under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District, specifically Bee and Refugio counties.

## PARTIES

9. From approximately March 2017 until April 2018, Garcia-Maldonado worked for WPX as an oilfield contractor, welder, and/or project manager. Throughout his employment with WPX, he was paid hourly with no overtime compensation and was misclassified as an independent contractor. His consent to be a party plaintiff is attached as Exhibit A.

10. Garcia-Maldonado brings this action on behalf of himself and other similarly situated workers who were paid by WPX's straight time for overtime system.

11. WPX paid each of these workers the same amount for each hour worked and failed to pay them overtime for hours worked in excess of 40 hours in a workweek.

12. The class of similarly situated employees sought to be certified as a collective action under the FLSA is defined as:

> **All oilfield workers who worked for WPX Energy Services Company, LLC during the past 3 years who were paid straight time for overtime (the "Putative Class Members").**

13. Garcia-Maldonado seeks conditional and final certification of this FLSA collective action under 29 U.S.C. § 216(b).

14. Defendant WPX Energy Services Company, LLC may be served through its registered agent: Cogency Global, Inc., 1601 Elm St., Suite 4360, Dallas, Texas 75201, or where ever they may be found.

**COVERAGE UNDER THE FLSA**

15. WPX has been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

16. WPX has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

17. WPX has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

18. Garcia-Maldonado and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

19. As will be shown through this litigation, WPX treated Garcia-Maldonado and the Putative Class Members as employees and uniformly dictated the pay practices to which Garcia-Maldonado and the Putative Class Members were subjected.

20. WPX's misclassification of Garcia-Maldonado and the Putative Class Members as independent contractors does not alter its status as an employer for purposes of the FLSA.

**FACTS**

21. WPX operates throughout the United States and in Texas.

22. In order to create the goods, and provide the services, it markets to its customers, WPX employ oilfield personnel like Garcia-Maldonado and the Putative Class Members.

23. These oilfield workers carry out the hands-on, day-to-day production work of WPX.

24. WPX paid Garcia-Maldonado and the Putative Class Members the same sum for each hour worked, regardless of the number of hours that they worked that day (or in that workweek) and failed to provide them with overtime pay for hours that they worked in excess of 40 hours in a workweek.

25. For example, Garcia-Maldonado worked for WPX from approximately March 2017 until April 2018 as a welder and project manager.

26. Garcia-Maldonado was paid on an hourly basis.

27. Garcia-Maldonado was not paid on a salary basis.

28. Garcia-Maldonado was not paid a salary guarantee.

29. WPX paid Garcia-Maldonado $65 for each hour worked.

30. WPX typically scheduled Garcia-Maldonado to work 12 hour shifts, for as many as 7 days a week.

31. During each year of his employment, Garcia-Maldonado regularly worked well in excess of 40 hours in a workweek.

32. But WPX did not pay Garcia-Maldonado overtime.

33. The work Garcia-Maldonado performed was an essential part of producing WPX's core products and/or services.

34. During Garcia-Maldonado's employment with WPX, WPX exercised control (directly or jointly through another company) over all aspects of Garcia-Maldonado's job.

35. Garcia-Maldonado did not make any substantial investment in order to perform the work WPX required of him.

36. WPX determined Garcia-Maldonado's opportunity for profit and loss.

37. Garcia-Maldonado's earning opportunity was based on the number of days WPX scheduled him to work.

38. Garcia-Maldonado was not required to possess any unique or specialized skillset (other than that maintained by all other individuals working in the same job position) to perform their job duties.

39. Garcia-Maldonado was not employed by WPX on a project-by-project basis, but rather on a consistent basis.

40. While Garcia-Maldonado was classified as an independent contractor, he was regularly on call for WPX and was expected to drop everything and work whenever needed.

41. WPX controlled all the significant or meaningful aspects of the job duties performed by Garcia-Maldonado.

42. WPX controlled the hours and locations Garcia-Maldonado worked, the tools he used, and the rates of pay he received.

43. Even when Garcia-Maldonado worked away from WPX's offices or job sites without the presence of a direct supervisor, WPX still controlled all aspects of Garcia-Maldonado's job activities by enforcing mandatory compliance with WPX's and/or its client's policies and procedures.

44. More often than not, Garcia-Maldonado utilized equipment provided by WPX to perform his job duties.

45. Garcia-Maldonado did not provide the essential equipment he worked with on a daily basis.

46. WPX made the large capital investments in buildings, machines, equipment, tools, and supplies in the business that Garcia-Maldonado worked in.

47. Garcia-Maldonado did not incur operating expenses like rent, payroll, marketing, and insurance.

48. Garcia-Maldonado was economically dependent on WPX during his employment.

49. WPX set Garcia-Maldonado's rates of pay, his work schedule, and prohibited him (formally or practically) from working other jobs for other companies while they were working on jobs for WPX.

50. Very little skill, training, or initiative, in terms of independent business initiative, was required of Garcia-Maldonado to perform his job duties.

51. Indeed, the daily and weekly activities of Garcia-Maldonado and the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created or mandated by WPX.

52. Virtually every job function performed by Garcia-Maldonado and the Putative Class Members was pre-determined by WPX and/or their clients, including the tools to use at a job site, the data to compile, the schedule of work, and related work duties.

53. Garcia-Maldonado and the Putative Class Members were generally prohibited from varying their job duties outside of the pre-determined parameters.

54. Finally, for the purposes of an FLSA overtime claim, the Putative Class Members performed substantially similar job duties related to oil and gas operations in the field.

55. Garcia-Maldonado performed routine manual and technical job duties that were largely dictated by WPX.

56. All of the Putative Class Members perform the similar job duties and are subjected to the similar policies and procedures which dictate the day-to-day activities performed by each person.

57. The Putative Class Members also worked similar hours and were denied overtime as a result of the same illegal pay practice.

58. The Putative Class Members regularly worked in excess of 40 hours each week.

59. Like Garcia-Maldonado, the Putative Class Members were generally scheduled for daily shifts of 12 (or more) hours for weeks at a time.

60. WPX did not pay Garcia-Maldonado on a salary basis.

61. WPX did not pay the Putative Class Members on a salary basis.

62. WPX paid the Garcia-Maldonado on an hourly basis.

63. WPX paid the Putative Class Members on an hourly basis.

64. WPX failed to pay Garcia-Maldonado overtime for hours worked in excess of 40 hours in a single workweek.

65. WPX failed to pay the Putative Class Members overtime for hours worked in excess of 40 hours in a single workweek.

66. WPX knew, or acted with reckless disregard for whether, Garcia-Maldonado and the Putative Class Members were misclassified as independent contractors.

67. WPX classifies other workers who perform substantially similar work, under similar conditions, as employees.

68. For example, WPX classifies one or more of its completion consultants as an "employee" for the purposes of withholding employment taxes.

69. WPX classifies one or more of its completion consultants as an "employee" for the purposes of its ERISA benefit plans.

70. WPX's policy of failing to pay Garcia-Maldonado and the Putative Class Members overtime violates the FLSA because these workers are, for the purposes of the FLSA, employees.

71. WPX's straight time for overtime system violates the FLSA because Garcia-Maldonado and the other straight time for overtime workers classified as independent contractors did not receive proper overtime pay for hours worked over 40 hours each week.

72. Because Garcia-Maldonado and the Putative Class Members were misclassified as independent contractors by WPX, they should receive overtime for all hours worked in excess of 40 hours in each workweek.

**FLSA VIOLATIONS**

73. WPX violated, and is violating, the FLSA by employing Garcia-Maldonado and the Putative Class Members for workweeks longer than 40 hours without paying them overtime.[1]

74. WPX knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Garcia-Maldonado and the Putative Class Members overtime.

75. WPX's failure to pay overtime to Garcia-Maldonado and the Putative Class Members was not reasonable, nor was the decision not to pay overtime made in good faith.

76. Accordingly, Garcia-Maldonado and the Putative Class Members are entitled to overtime under the FLSA in an amount equal to 1 and ½ times their rate of pay, plus liquidated damages, attorney's fees and costs.

**COLLECTIVE ACTION ALLEGATIONS**

77. The illegal pay practices WPX imposed on Garcia-Maldonado were likewise imposed on the Putative Class Members.

78. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

79. Numerous other individuals who worked with Garcia-Maldonado were classified as independent contractors, paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

80. Based on his experiences and tenure with WPX, Garcia-Maldonado is aware that WPX's illegal practices were imposed on other Putative Class Members.

81. The Putative Class Members were improperly classified as independent contractors and not paid overtime when they worked in excess of 40 hours per week.

---

[1] This same conduct violates numerous state laws. Therefore, following some discovery and the opt-in process, Plaintiff may seek leave to add additional claims under state laws.

82. WPX's failure to pay overtime at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

83. Garcia-Maldonado's experiences are therefore typical of the experiences of the Putative Class Members.

84. The specific job titles or precise job locations of the various members of the Putative Class Members do not prevent class or collective treatment.

85. Garcia-Maldonado has no interests contrary to, or in conflict with, the Putative Class Members.

86. Like each Putative Class Member, Garcia-Maldonado has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

87. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

88. Absent a class and collective action, many members of the Putative Class Members will not obtain redress of their injuries and WPX will reap the unjust benefits of violating the FLSA and applicable state labor law.

89. Furthermore, even if some of the Putative Class Members could afford individual litigation against WPX, it would be unduly burdensome to the judicial system.

90. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members and provide for judicial consistency.

91. The questions of law and fact common to each of the Putative Class Members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

a. Whether WPX employed the members of the Class within the meaning of the applicable state and federal statutes, including the FLSA;

b. Whether the Putative Class Members were improperly misclassified as independent contractors;

c. Whether WPX's decision to classify the members of the Class as independent contractors was made in good faith;

d. Whether WPX's decision to not pay time and a half for overtime to the members of the Class was made in good faith;

e. Whether WPX's violation of the FLSA was willful; and

f. Whether WPX's illegal pay practices were applied to the Putative Class Members.

92. Garcia-Maldonado and the Putative Class Members sustained damages arising out of WPX's illegal and uniform employment policy.

93. Garcia-Maldonado knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective or class action.

94. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective and class action treatment.

## JURY DEMAND

95. Garcia-Maldonado demands a trial by jury.

## RELIEF SOUGHT

96. WHEREFORE, Garcia-Maldonado prays for judgment against WPX as follows:

a. An Order designating the Putative FLSA Class as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated

individuals with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b.  For an Order appointing Garcia-Maldonado and his counsel to represent the interests of the FLSA Class;

c.  For an Order finding WPX liable to Garcia-Maldonado and the Potential Class Members for unpaid overtime owed under the FLSA, as well as liquidated damages in an amount equal to their unpaid compensation;

d.  For an Order awarding attorneys' fees, costs, and pre- and post-judgment interest at the highest available rates; and

e.  For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: /s/ *Andrew W. Dunlap*
    Michael A. Josephson
    State Bar No. 24014780
    Federal ID 27157
    mjosephson@mybackwages.com
    Andrew W. Dunlap
    State Bar No. 24078444
    Federal ID 1093163
    adunlap@mybackwages.com
    **JOSEPHSON DUNLAP**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    713-352-1100 – Telephone
    713-352-3300 – Facsimile

    **AND**

    Richard J. (Rex) Burch
    Texas Bar No. 24001807
    Federal ID 21615
    **BRUCKNER BURCH, P.L.L.C.**
    8 Greenway Plaza, Suite 1500
    Houston, Texas 77046
    713-877-8788 – Telephone
    713-877-8065 – Facsimile
    rburch@brucknerburch.com

    **ATTORNEYS IN CHARGE FOR PLAINTIFF**