### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF TEXAS
### CORPUS CHRISTI DIVISION

| | |
|---|---|
| GARARDO GARCIA-MALDONADO, individually and on behalf of all others similarly situated,<br><br>vs.<br><br>WPX ENERGY SERVICES COMPANY, LLC, WPX ENERGY PERMIAN, LLC; AND PATRIOT DOZER SERVICE, LLC D/B/A TINDOL CONSTRUCTION. | DOCKET NO. 2:18-cv-00450<br><br>JURY TRIAL DEMANDED<br><br>COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b) |

## UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT

Plaintiff Garcia Maldonado and the opt-in Plaintiffs (collectively "Plaintiffs") file this Unopposed Motion for Approval of Settlement Agreement with Patriot Dozer Service, LLC d/b/a Tindol Construction (Tindol). Tindol is unopposed to the filing of this Motion. In support thereof, Plaintiffs respectfully shows the Court as follows:

### I. INTRODUCTION

Plaintiffs and Tindol (collectively the "Parties") have reached a Settlement Agreement with respect to this Fair Labor Standards Act (FLSA) case. The Settlement Agreement represents the culmination of months of investigation, litigation, and negotiation. If approved, it will provide meaningful monetary relief to Plaintiffs and reprieve Tindol by eliminating the need for them and their representatives to remain involved in protracted litigation.

This Settlement Agreement is the compromise of disputed claims and does not constitute an admission by Tindol of any violation of any federal, state, or local statute or regulation; of any violation of any of Plaintiffs' rights; or of any duty owed by Tindol to Plaintiffs. Tindol expressly denies Plaintiffs' claims and dispute Plaintiffs' entitlement to recover any damages; and disagree with

Plaintiffs as to, for example and without limitation: the number of hours Plaintiffs actually worked; whether Plaintiffs were paid a salary for any hours worked; whether Plaintiffs were properly classified as an independent contractors; whether Plaintiffs were exempt under one or more exceptions to the FLSA's overtime requirements; whether Tindol's alleged FLSA violations were made in good faith and on reasonable grounds; and whether Tindol's alleged FLSA violations were willful.

The Parties have entered into their Settlement Agreement as a compromise to avoid the risks, distractions, and costs that will result from further litigation. For these reasons, the Parties jointly request the Court approve the Parties' Settlement Agreement and dismiss Plaintiffs' claims against Tindol with prejudice.

## II. ARGUMENT & AUTHORITIES

1.    **The Parties have Agreed upon a Formal Settlement Agreement.**

The Settlement Agreement attached to this motion has already been agreed upon and executed by the Parties. *See* Ex. 1. Under the Settlement Agreement, the amounts have been allocated to each Settlement Class Member based upon their time alleged to have been worked. Settlement Class Members will release their wage and hour claims only if they complete and return a release and claim form. *See* Ex. 2 (proposed notice form).

This is an opt-in settlement and the Settlement Class Members will receive a check in the mail once they fill out and return the claim form.

2.    **The Settlement Represents a Reasonable Compromise of this Litigation.**

This Settlement Agreement provides Garcia-Maldonado and Settlement Class Members with a payment for their alleged unpaid overtime wages, which is commensurate with the disputed nature of Plaintiffs' claims. Tindol dispute Plaintiffs' claims as to liability and amount.

All Parties are represented by experienced counsel. Class Counsel has served as lead counsel in numerous large-scale wage and hour class/collective actions. *See, e.g., Roussell v. Brinker Int'l, Inc.*, 09-

20561, 2011 WL 4067171 (5th Cir. Sept. 14, 2011) (affirming jury verdict in FLSA collective action); *Belt v. EmCare, Inc.*, 444 F.3d 403 (5th Cir. 2006) (affirming summary judgment in favor of a nationwide class of FLSA plaintiffs).

The Parties and their respective Counsel agree the Settlement Agreement is a fair and reasonable compromise of the claims alleged by Plaintiffs' in light of the procedural posture of the case, the litigation risks, and the litigation costs to all Parties. The Parties have engaged in arm's-length and extended settlement negotiations.  Because the settlement is a fair and reasonable compromise and adequately compensates the participants for the unpaid overtime hours alleged by the Plaintiffs, the Parties seek entry of the submitted Order Approving the Settlement. The Settlement Agreement is a fair and reasonable resolution of a bona fide dispute.

The Fifth Circuit has set out six factors for evaluating settlement proposals: (1) whether the settlement was a product of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the factual and legal obstacles [to] prevailing on the merits; (5) the possible range of recovery and the certainty of damages; and (6) the respective opinions of the participants, including class counsel, class representative, and the absent class members. *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982).

First, the settlement is a product of the extended negotiations of the Parties and significant follow-up work. There was no fraud or collusion by any participant.

Further, as detailed further below regarding factors 2 through 5, this case was settled after months of work by the Parties and their Counsel. Prior to settlement, the Parties worked together to resolve various complex, disputed issues, such as independent contractor status, staffing company and joint employer liability. And if the case were not settled, there would be extensive work to come, including certification motions, dispositive motions, propounding and responding to discovery to and from Tindol and Plaintiffs, associated discovery disputes, and questions regarding complex legal issues

including applicability of the FLSA, economic realities, good faith and willfulness, and decertification. These issues are in addition to any questions of the hours worked by Plaintiffs in the first place. The Parties engaged in significant work, recognized and appreciated the risks in proceeding if this case were not settled, and (Plaintiffs in particular) recognized that their settlement represented a compromise of the range and certainty of their damages. *Id.*

Finally, that this settlement is in the best interest of the Class Members is an opinion shared by Class Counsel and the Plaintiff.

### 3.   The Requested Attorney Fees and Litigation Expenses are Reasonable.

The Court may begin its analysis of a contingent attorney fee by looking at fees awarded in other courts, particularly in the Fifth Circuit. The Fifth Circuit recognizes that contingency fees are desirable because it is predictable, encourages settlement, and reduces incentives for protracted litigation. *Union Asset Mgmt. v. Dell, Inc.*, 669 F.3d 632, 643-44 (5th Cir. 2012) (adding, "[D]istrict courts in this Circuit regularly use the percentage method blended with a *Johnson* reasonableness check, and for some it is the 'preferred method.'").

Within the Fifth Circuit, customary contingency fees for class funds have ranged from 33.33% to 50%. *See In re Bayou Sorrell Class Action*, No. 6:04-cv-1101, 2006 WL 3230771 (W.D. La. Oct. 31, 2006) (Haik, C.J.) (awarding, in a percentage/*Johnson* analysis, attorney fees of 36%). In FLSA cases such as this,[1] the "customary contingency" in the Fifth Circuit is within the range of 35% to 40%.[2] *See Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001). Indeed, Courts within the Fifth Circuit regularly approve FLSA contingency fee arrangements of 40%, finding it to be fair and reasonable

---

[1] Other types of actions may involve concerns not present in an FLSA matter such as this. For example, Rule 23 class actions have unique procedural rules not applicable to an FLSA case, and notably bind nonparticipating class members, while an FLSA action requires an affirmative decision by putative class members to opt-in. Likewise, this case does not invoke the unique concerns involved in a maritime injury, where the court must be mindful of its role in protecting a ward of admiralty.

[2] The Fifth Circuit notes this was the customary fee for cases "against the government," but Class Counsel does not believe this distinction to be material.

considering the customary contingency fee arrangements in this community. *Legros v. Mud Control Equip., Co.*, No. 15-1082, 2017 WL 925730, at *3 (W.D. La. Mar. 6, 2017) (Doherty, J.); *see also Comeaux v. Quality Energy Svcs., Inc.*, No. 6:15-cv-02510-RGJ-PJH, ECF No. 78 (W.D. La. Jul. 20, 2017) (James, J.) (approving attorney fees of 40%).

In evaluating a contingency fee award, the Court may look at the factors set forth in *Johnson v. Georgia Hwy. Exp., Inc.*, 488 F.2d 714, 717-20 (5th Cir. 1974). The *Johnson* factors include the following of import in this case: (1) the time and labor required; (2) the novelty and difficulty of the questions posed; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; and (10) awards in similar cases.

Regarding the time and efforts required of Class Counsel (factors 1 and 7), this matter was pending months where discovery was propounded, mediation and lengthy negotiations took place regarding tolling, stay of litigation, independent contractor status, Defendants' staffing companies, and settlement. This represents a significant devotion of time to reach resolution of this case.

Second, the separately-negotiated, agreed contingency fee (factors 5, 6, and 10) in the Professional Services Agreement between Plaintiffs and Class Counsel provides for a contingency fee of 40% of the gross settlement amount, which is in line with Fifth Circuit precedent. *Vela*, 276 F.3d at 681; *see also Legros*, No. 15-1082, 2017 WL 925730, at *3 (approving attorney fees of 40%); *Comeaux*, No. 6:15-cv-02510-RGJ-PJH, ECF No. 78 (same).

Next, Class Counsel's skill, knowledge, reputation, and experience (factors 2, 3, and 9) are well-recognized in FLSA cases such as this. *See, e.g., Roussell*, 2011 WL 4067171 (affirming jury verdict in FLSA collective action); *Belt.*, 444 F.3d 403 (affirming summary judgment in favor of a nationwide

class of FLSA plaintiffs). FLSA collective action cases such as this are the main focus of Class Counsel's docket. Although Class Counsel is based in Texas, both BRUCKNER BURCH PLLC and JOSEPHSON DUNLAP LLP have a national docket of FLSA cases, with litigation across the United States, not only in Texas, but also in California, Washington, Nebraska, Colorado, Illinois, Louisiana, New Mexico, Ohio, Oklahoma, Pennsylvania, South Dakota, Utah, Virginia, Massachusetts, and elsewhere. In recent years, Class Counsel's joint docket has carried around or over 200 cases involving collective action claims for oilfield workers, such as this case.

Class Counsel's experience has caused them to review and become familiar with a large body of documents and information concerning FLSA litigation, which benefits cases such as this and maximizes the settlement value of the case. Class Counsel's experience in this field has also resulted in a familiarity with the evidence and testimony necessary to the successful prosecution of cases such as this. Indeed, as one court expressly noted regarding Plaintiffs' Counsel, "the firms involved in this case on the Plaintiffs' side [including BRUCKNER BURCH] are **among the most experienced and best regarded in this specialized practice area**." *Kurgan v. Chiro One Wellness Ctrs., LLC*, No. 10-CV-1899, 2015 WL 1850599, at *4 (N.D. Ill. Apr. 21, 2015). In all, Class Counsel has secured millions of dollars in settlements in FLSA cases for their clients. Further, Class Counsel's acceptance of this case (factor 4), and the considerable time that it has taken to work this case, has precluded time that they could have spent pursuing other matters.

Finally, "the most critical factor in determining a fee award is the degree of success obtained" (factor 8). *Singer v. City of Waco, Tex.*, 324 F.3d 813, 829 (5th Cir. 2003). The degree of success here is high because Tindol vigorously contested Garcia-Maldonado's claims and denied that the Plaintiffs were improperly paid, underpaid, or that any alleged damages are owed, and Plaintiffs had to litigate this matter for over a year before the matter could be settled as a result of mediation.

For these reasons, Garcia-Maldonado believes a fee of 40% is reasonable and necessary in this case. Class Counsel also seeks reimbursement of their advanced litigation expenses.

**4.    Plaintiffs' Attorney Fees are Part of the Settlement Agreement.**

As part of the settlement, the Parties have agreed that Garcia-Maldonado's Counsel is entitled to a total of 40% of the gross settlement amount. This is the agreement that the Parties have presented to the Court for approval. *See Evans v. Jeff D.*, 475 U.S. 717, 726-27 (1986) ("[T]he power to approve or reject a settlement negotiated by the parties before trial does not authorize the court to require the parties to accept a settlement to which they have not agreed."); *Klier v. Elf Atochem North Am., Inc.*, 658 F.3d 468, 475 (5th Cir. 2011) ("[T]he court cannot modify the bargained-for terms of the [class-action] settlement agreement."); *In re Oil Spill by Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, 910 F.Supp.2d 891, 944 (E.D. La. 2012) ("[T]he Court is not authorized to insist upon changes that, in its judgment, might lead to a superior settlement."), *aff'd sub nom. In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014), *reh'g en banc denied sub nom. In re Deepwater Horizon—Appeals of the Economic and Property Damage Class Action Settlement*, 756 F.3d 320 (5th Cir. 2014), *cert. denied sub nom. BP Exploration & Prod, Inc. v. Lake Eugenie Land & Dev., Inc.*, 135 S.Ct. 754 (2014); *Blanchard v. Forrest*, CIV. A. 93-3780, 1996 WL 28526, at *3 (E.D. La. Jan. 23, 1996) (overruling magistrate judge's modification to consent judgment because courts lack authority to modify a settlement agreement).

Because Garcia-Maldonado has made the amount of and provisions regarding payment of their attorney fees an inseverable part of their agreement with Tindol, Plaintiffs stresses that a rejection of this (or another portion) of their Settlement Agreement will result in a failure of the Parties' agreement, a return of funds to Tindol, and the resumption of litigation.

### III. CONCLUSION

The Settlement Agreement reached by Plaintiffs and Tindol will provide considerable relief to the Settlement Class Members. The Court should approve the Settlement Agreement reached by the Parties.

Respectfully submitted,

By: */s/ William R. Liles*

**Michael A. Josephson**
Texas Bar No. 24014780
Federal ID No. 27157
**Andrew W. Dunlap**
Texas Bar No. 24078444
Federal ID No. 1093163
**William R. Liles**
Texas Bar No. 24083395
Federal ID No. 2035571
**Josephson Dunlap LLP**
11 Greenway Plaza, Ste. 3050
Houston, Texas 77046
Telephone:     (713) 352-1100
Facsimile:      (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com
wliles@mybackwages.com

AND

**Richard J. (Rex) Burch**
Texas Bar No. 24001807
Federal Bar No. 21615
**Bruckner Burch PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Telephone:     (713) 877-8788
Facsimile:      (713) 877-8065
rburch@brucknerburch.com

**Certificate of Service**

On January 31, 2020 I served a copy of this document on all registered parties and/or their counsel of record, via the Court's CM/ECF system.

/s/ *William R. Liles*
William R. Liles

**Certificate of Conference**

I conferred with Counsel for Tindol, who is unopposed to the relief sought in this Motion.

/s/ *William R. Liles*
William R. Liles